# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **CRIMINAL NUMBER 25-357-1** |
| | : | |
| **CRISTIAN GEOVANNI ROJAS** | : | |
| **BENITEZ** | : | |

## ORDER

    **AND NOW**, this _____ day of _____, 2025, upon consideration of Defendant's Response to the Government's Notice to Admit Evidence of Other Bad Acts Pursuant to Federal Rule of Evidence 404(b), it is hereby **ORDERED** that the government's motion is **DENIED**.

    It is so **ORDERED**.

**BY THE COURT:**

_____
**THE HONORABLE NEIL A. WEILHEIMER**
**United States District Court Judge**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **CRIMINAL NUMBER 25-357-1** |
| | : | |
| **CRISTIAN GEOVANNI ROJAS** | : | |
| **BENITEZ** | : | |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE*
TO ADMIT EVIDENCE OF OTHER BAD ACTS PURSUANT RULE 404(b)**

**CRISTIAN GEOVANNI ROJAS BENITEZ**, by and through his attorney,

**JONATHAN MCDONALD**, Assistant Federal Defender, Federal Community Defender

Office for the Eastern District of Pennsylvania, respectfully moves to preclude admission of

evidence under Federal Rule of Evidence 404(b). As grounds, it is stated:

1.      Cristian Geovanni Rojas Benitez is charged in an indictment with one count of

using a motor vehicle as a deadly weapon to forcibly assault, resist, oppose, impede, intimidate,

and interfere with an officer of the United States, while the officer was engaged in the

performance of his official duties, in violation of 18 U.S.C. § 111(a)(1), (b).

2.      The government alleges that, on or about June 23, 2025, Mr. Rojas Benitez used

his truck as a dangerous or deadly weapon to forcibly assault a Special Agent of the United

States Department of Homeland Security ("DHS"), Homeland Security Investigations ("HSI"),

who was at that time engaged in the official duties of a DHS HSI Special Agent, in executing

an administrative warrant.

3.      Mr. Rojas Benitez has an intermingled history of contacts with the criminal

justice system for non-violent misdemeanor offenses and numerous immigration court

proceedings. He a citizen of Mexico who came to the United States as a B2 visa holder on March 7, 2007, and his visa expired on December 14, 2007. On March 7, 2017, ICE took Mr. Rojas Benitez into custody pending removal proceedings following an arrest for his second DUI.[1] Mr. Rojas Benitez was released from ICE custody on April 26, 2017, on a $5,000 bond. On March 7, 2018, Mr. Rojas Benitez's wife filed an I-797 petition for an alien relative. On December 4, 2019, Mr. Rojas Benitez and his wife filed an I-130 petition to register / adjustment to status as a legal permanent resident with a notice of intent to offer evidence. On June 20, 2020, his wife filed a request to withdraw her petition. On July 26, 2021, ICE issued an administrative arrest warrant for Mr. Rojas Benitez, but he was never taken into the custody of ICE. On October 16, 2023, the immigration judge denied Mr. Rojas Benitez's motion to dismiss the removal proceedings with prejudice. On February 27, 2024, Mr. Rojas Benitez was arrested and charged with providing false identification to law enforcement, operating a vehicle without having completed a mandatory term of ignition interlock, possession of a controlled substance and operating an unregistered vehicle; he was subsequently sentenced to a term of 1 year probation on August 1, 2024.[2] On Augst 5, 2024, Mr. Rojas Benitez's wife filed for divorce and on September 26, 2024, she filed her second withdrawal of her I-130 petition. At the time of the day in question, Mr. Rojas Benitez was actively reporting to probation for the ignition interlock violation. Mr. Rojas Benitez had approved work authorization through at least May 19, 2025, and has an upcoming hearing in immigration court on September 12, 2025.

4.      In June, 2025, members of the Federal Bureau of Investigation ("FBI"), Bureau of Alcohol, Tabacco and Firearms ("ATF"), ICE Enforcement and Removal Operations ("ICE-ERO"), conducted surveillance in order to take Mr. Rojas Benitez into custody pursuant for the

---

[1] The first DUI was in fact withdrawn following completion of the Accelerated Rehabilitation Disposition program.
[2] See Court of Common Pleas of Lancaster County Criminal Docket No. CP-36-CR-0002007-2024.

outstanding immigration detainer. Federal law enforcement officials eventually identified 38 ½ West Lancaster Avenue, Apartment #2 in Downingtown, Pennsylvania as Mr. Rojas Benitez's residence, and a dark grey Dodge Ram Pickup with Pennsylvania registration ZVX-0782 as his vehicle.

6.      At approximately 8:30 a.m. on June 23, 2025, DHS HSI Special Agent John Askew along with ICE-ERO Deportation Officer Mark Perrini and ATF Special Agent Michael Orchulli, observed a male exit 38 ½ West Lancaster Avenue, Apartment #2 and drive the dark grey Dodge Ram Pickup towards the exit of the apartment complex parking lot. The federal officers conducted a traffic stop before the truck exited the apartment complex parking lot.

7.      The federal officers claim that Mr. Rojas Benitez refused to obey their commands to exit the vehicle or roll down the driver's front door window. The driver of the vehicle is clearly on the phone for the duration of the encounter. After roughly 3 minutes Officer Perrini broke the rear driver's side passenger window and as special agent Agnew walked from the front of the vehicle toward the passenger side of the vehicle. When Agent Agnew left more room between himself and the police vehicle parked at an angle in front of the Dodge Ram, the Dodge Ram accelerated through the gap. As the car drove away, Agent Agnew's hand pushes off the vehicle. There were no other law enforcement officers in front of the Dodge Ram. No officer reported any injury.

10.     Later that same day, Mr. Rojas Benitez reportedly called his Lancaster County probation officer, Adrianne Barnett. He had missed his 9:00 am scheduled appointment with her that morning. Mr. Rojas Benitez purportedly informed Ms. Barnett that he had just fled from an encounter with ICE agents. According to the government, Mr. Rojas Benitez asked Ms. Barnett if ICE agents had contacted her to inquire about him. She informed him that no

ICE agents had contacted her. Ms. Barnett reportedly informed Mr. Rojas Benitez that she would reschedule their appointment to June 25, 2025, and that he must attend.

11.     On June 24, 2025, ICE-ERO Deportation Officer Perrini contacted Ms. Barnett to inquire about Mr. Rojas Benitez. Later that day, Mr. Rojas Benitez called Ms. Barnett to reschedule their appointment to June 26, 2025. However, Mr. Rojas Benitez failed to appear for this rescheduled meeting and Ms. Barnett issued a probation violator warrant for him.

12.     Mr. Rojas Benitez eventually was apprehended on or about July 24, 2025, going to work in the District of Columbia by United States Marshals.

13.     The government has formally notified defense counsel that it intends to seek admission of evidence regarding Mr. Rojas Benitez's immigration history, his communications with Ms. Barnett after the incident on June 23, 2025, and his subsequent probation violations, including his failure to appear at his mandatory probation appointment.

14.     The government claims that the proffered evidence is intrinsic to the offense charged in the indictment, but this is not so. The only relevant considerations for the jury are whether the defendant forcibly assaulted, resisted, opposed, impeded, intimidated, and interfered with a federal law enforcement officer in the performance of their official duties and whether the Dodge Ram was used as a deadly or dangerous weapon. However, evidence regarding Mr. Rojas Benitez's immigration history, his compliance with his terms of probation, and his communications with his state probation officer following the incident of June 23, 2025, do not assist the jury in determining whether the Dodge Ram was intended to be used, or even was used, as a deadly or dangerous weapon. These purported acts do not facilitate the commission of the offense charged in the indictment.

15.     The government claims in the alternative that the proffered evidence is admissible under Federal Rule of Evidence 404(b) to show Mr. Rojas Benitez's "knowledge,

intent, and absence of mistake during the crime on June 23, 2025" as well as his "consciousness of guilt." It is abundantly clear that driving away from the encounter with the law enforcement is direct and clear evidence that the driver of the Dodge Ram, identified by the agents as the defendant by his tattoos, did not want to submit to the authority of the officers, lawful or otherwise. There is no conceivable dispute that the Dodge Ram was driven intentionally. Contacting his probation Officer and disclosing an interaction with ICE in fact suggests that he did not believe he did anything more serious than evade ICE custody is not evidence of consciousness of guilt of an aggravated assault. The proffered evidence will not provide insight into Mr. Rojas Benitez's state of mind when the offense charged in the indictment occurred because the purported bad acts are wholly unrelated to the offense currently charged by the government. Driving away from law enforcement is direct evidence that Mr. Rojas Benitez desired to avoid immigration officials. Interactions with probation do not provide any insight into whether Mr. Rojas Benitez intended to assault DHS HSI Special Agent Askew on June 23, 2025, except to suggest he believed he did nothing more than evade ICE.

16.     Under certain circumstances Rule 404(b) evidence may be admissible. A defendant, however, has the right to stand trial on the present charges without having the trier of fact consider evidence of unrelated matters which would prejudice him and violate his right to a fair trial.

17.     The probative value of the evidence the government seeks to introduce is substantially outweighed by its prejudicial impact. Evidence regarding Mr. Rojas Benitez's immigration history, the number of his non-violent misdemeanor contacts with law enforcement, as well as his communications with his state probation officer following the June 23, 2025, incident will lead the jury to impermissibly conclude that, because Mr. Rojas Benitez

overstayed his visa and had committed a non-violent misdemeanor offenses, he is "one of those" criminal illegal aliens who must have committed the offense involving on an immigration official as currently charged by the government.

18.     Moreover, introduction of the proffered evidence will confuse the jury and waste judicial time and resources in light of the specific allegations in the indictment. The entirety of the criminal accusations in this case are captured on video, the relevant portion of which is roughly 3 minutes long. Addressing Mr. Rojas Benitez's immigration history, including his prior criminal convictions, his communications with his probation officer, and subsequent violation of conditions of his probation will be require the court to devote more time to explain the factual circumstances of the proffered evidence than the relevant 3 minutes of alleged conduct. This jury is very simple and straight forward, admitting the proffered evidence will confuse the issues for the jury and prejudice Mr. Rojas Benitez. Any effort to attempt to minimize the prejudicial impact of this evidence through limiting instructions would be a fruitless effort.

**WHEREFORE**, for the reasons set forth in this Response and accompanying Memorandum of Law, Defendant Cristian Geovanni Rojas Benitez respectfully requests that this Honorable Court deny the government's request to admit the proffered evidence at trial.


Respectfully submitted,


*/s/ Jonathan McDonald*
JONATHAN MCDONALD
Assistant Federal Defender

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **CRIMINAL NUMBER 25-357-1** |
| | : | |
| **CRISTIAN GEOVANNI ROJAS** | : | |
| **BENITEZ** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION *IN LIMINE*
TO ADMIT EVIDENCE OF OTHER BAD ACTS PURSUANT RULE 404(b)**

## I.    INTRODUCTION

Defendant Cristian Geovanni Rojas Benitez has been charged in the indictment with using his truck as a dangerous or deadly weapon to forcibly assault DHS HSI Special Agent John Askew on June 23, 2025, in violation of 18 U.S.C. § 111(a)(1), (b). The government has notified defense counsel that it intends to introduce at trial evidence regarding Mr. Rojas Benitez's immigration history, including his contacts with the criminal justice system for non-violent misdemeanor offenses, as well as his compliance with the terms of his probation, and the nature of his communications with his state probation officer following the June 23, 2025, incident. The government claims that this evidence is intrinsic to the offense alleged in the indictment. Alternatively, the government asserts that this evidence is admissible under Federal Rule of Evidence 404(b) to prove Mr. Rojas Benitez possessed the knowledge and intent to commit the offense alleged in the indictment, as well as the absence of mistake and his consciousness of guilt in relation to the offense alleged in the indictment.

However, this evidence is not admissible under Federal Rule of Evidence 404(b). The issues in this matter are very narrowly focused, and his immigration and criminal history do not assist the jury in evaluating his physical conduct or mental state. Mr. Rojas Benitez's general intent to drive the Dodge Ram is not at issue. This evidence will not provide insight into Mr. Rojas Benitez's specific intent to use the Dodge Ram as a deadly or dangerous weapon. Mr. Rojas Benitez's actual legal status in immigration court is not at issue. His immigration history is not relevant under Federal Rule of Evidence 401. The evidence that he attempted to evade, obstruct, resist, or impede law enforcement is directly addressed by his actual physical actions on the date of the encounter. His voluntary communications with his probation officer that ICE tried to arrest him implies that he did not believe that he assaulted ICE. There is no aspect of this conversation, the terms of his probation, or violation history that would assist the jury in addressing the issue of whether the Dodge Ram was used as a deadly or dangerous weapon which is the only true issue in the trial. The video evidence of the Dodge Ram driving off is the only necessary evidence of his effort to evade ICE, and is far stronger and more direct evidence than a subsequent statement to a probation officer that ICE tried to arrest him. The prejudicial impact of this evidence is immense and substantially outweighs any conceivable probative value it could provide, making it inadmissible under Federal Rule of Evidence 403. The link between the proposed evidence is attenuated, confusing, and will make the jury trial substantially longer and more complicated. Thus, the presentation of this evidence will serve only to confuse the jury and waste the court's time. The government should be precluded from introducing this evidence at trial.

## II.    <u>**DISCUSSION**</u>

Federal Rule of Evidence 404(b) does not exclude intrinsic evidence which either directly proves the charged offense or served to facilitate the commission of the charged

offense. Instead, Rule 404(b) prohibits the admission of character evidence to prove that a defendant acted in conformity therewith.

In order to support a conviction for a violation of 18 U.S.C. § 111(a)(1), (b), the government must prove five essential elements beyond a reasonable doubt:

> One: Defendant forcibly assaulted an officer or employee of the United States; Two: At the time of this forcible assault, the victim was in fact an officer or employee of the United States; Three: the victim was engaged in official duties at the time of the assault; Four: The assault was made while using a deadly or dangerous weapon; and Five: The assault was done in a voluntary and intentional manner by Defendant.

*See* 2 Fed. Jury Prac. & Instr. § 24:06 (6th ed.).

The term "forcibly assaults," as used in 18 U.S.C. § 111(a)(1), (b), is defined as "any deliberate and intentional attempt or threat to inflict physical injury upon another with force or strength when that attempt or threat is coupled with an apparent present ability to do so." *See* 2 Fed. Jury Prac. & Instr. § 24:08 (6th ed.). Courts within the Third Circuit have recognized that "[b]ecause the adverb forcibly modifies all the following verbs in the text of the statute, to satisfy the force element, the government need only prove that the defendant committed one of the prohibited acts with an amount of force equaling more than mere passive resistance." *United States v. Green*, No. CR 20-00049, 2022 WL 267897, at *3 (E.D. Pa. Jan. 28, 2022) (Wells, M.J.)(quoting *United States v. Green*, 543 F. App'x 266, 272 (3d Cir. 2013) (non-precedential); *United States v. Goodwin*, 440 F.2d 1152, 1154 (3d Cir. 1971))(cleaned up).

Generally, the term "voluntary" is describes an act that is "[d]one by design or intention [or is] [u]nconstrained by interference; not impelled by outside influence." VOLUNTARY, Black's Law Dictionary (12th ed. 2024). The term "intentional" is defined generally as the "conscious desire or purpose to act in a certain way or to cause a certain result, or … acting in that way or would be practically certain to cause that result." Third Circuit, *Model Criminal Jury Instructions*, No. 5.03 (2021).

Thus, to support a conviction for aggravated assault of a federal officer in violation of 18 U.S.C. § 111(a)(1), (b), the government is required to show either that it was Mr. Rojas Benitez's conscious desire or purpose to forcibly assault DHS HSI Special Agent Askew or to cause the forcible assault of the federal agent, or in the alternative, show that Mr. Rojas Benitez knew that he was acting to cause the forcible assault of DHS HSI Special Agent Askew or he was practically certain his actions would bring about that result. *See Green*, 2022 WL 267897, at *4 (citing *United States v. Wheeler*, 831 F. App'x 54, 56 (3d Cir. 2020) (non-precedential); Third Cir. Model Jury Instructions – Criminal No. 5.03 (2018)).

### A.    Much of the Proffered Evidence is Not Relevant.

First, the vast majority of Mr. Rojas Benitez's immigration history is simply not relevant under Federal Rule of Evidence 401. The charge is to obstruct, impede, resist, oppose, assault law enforcement engaged in the performance of official duties and to use the Dodge Ram as a deadly weapon. The agents in this case were executing an administrative arrest warrant. The existence of the administrative warrant is evidence of the performance of lawful duties. The Jury does not need to know the preceding 18 years of immigration proceedings to determine whether the defendant was attempting to obstruct, impede, resist, oppose or assault law enforcement. The same can be said about all probation violations. The admission that ICE tried to arrest him is relevant in a vacuum, but it is insignificant compared to the 3-minute video of ICE ordering the defendant to roll down his window. The communications with probation have no relevance on the issue of whether the Dodge Ram is a deadly weapon. The communications with probation have no relevance on the whether Rojas Benitez used the Dodge Ram as deadly weapon.

### B.    None of the Proffered Evidence is Intrinsic Evidence.

The government maintains that evidence regarding Mr. Rojas Benitez's immigration history as well as his communications with his state probation officer following the June 23, 2025, incident is intrinsic to the offense involving aggravated assault on a federal officer as charged in the indictment.

The Third Circuit has recognized that, "an intrinsic act either directly proves the charged offense or facilitates the commission of and is performed contemporaneously with the charged crime." *United States v. Barkers-Woode*, 136 F.4th 496, 502 (3d Cir. 2025)(quoting *United States v. Green*, 617 F.3d 233, 248-249 (3d Cir. 2010))(cleaned up). A subsequent bad act may be deemed intrinsic evidence where the subsequent offense directly proves the charged conduct. *See United States v. Padilla*, 325 Fed.Appx. 131, 132-33 (3d Cir., Apr. 20, 2009) (subsequent drug transaction was intrinsic to charged drug activity, as second transaction was committed to pay back debt incurred from charged offense).

The government appears to claim that evidence regarding Mr. Rojas Benitez's immigration status and history, which includes his criminal convictions, is intrinsic to the assault-related offense charged in the indictment because it provides background information to explain why the DHS HSI Special Agent Askew and his colleagues encountered Mr. Rojas Benitez on June 23, 2025. *See* Gov't 404(b) Motion, p. 10. However, the existence of the immigration administrative warrant would sufficiently inform the fact-finder regarding the basis of the federal agents' surveillance of Mr. Rojas Benitez. An extensive presentation of Mr. Rojas Benitez's 18-year history of immigration proceedings, including his criminal history and active probation, and subsequent communications with probation and violation of conditions of probation is not required to provide this information to the fact-finder.

The government also seems to claim that Mr. Rojas Benitez's communications with his state probation officer following the June 23, 2025, incident are intrinsic to the assault-related offense charged in the indictment because this evidence establishes that Mr. Rojas Benitez knew that the officers were immigration officials acting in their official capacity. *See* Gov't 404(b) Motion, p. 9. The government apparently has concluded that Mr. Rojas Benitez will attempt to raise affirmative defense of justification. However, Mr. Rojas Benitez's decision to raise an affirmative defense is outside the purview of the government. To the contrary, such an assumption is mere speculation. It is preposterous to suggest that defense counsel would argue that Mr. Rojas Benitez was justified in assaulting law enforcement with a deadly weapon because they broke his window. The government should not be permitted to introduce evidence to challenge a defense based solely on unsubstantiated hunches regarding a defendant's trial strategy.

Contrary to the government's contentions, the proffered evidence is not "intrinsic" to aggravated assault of a federal officer offense alleged in the indictment. Neither evidence regarding Mr. Rojas Benitez's immigration history nor evidence of his communications with his state probation officer directly prove that Mr. Rojas Benitez voluntarily and intentionally used his truck as a dangerous or deadly weapon to forcibly assault DHS HSI Special Agent John Askew on June 23, 2025.

Further, neither Mr. Rojas Benitez's immigration history nor his communications with his state probation officer in any way facilitated the commission of the alleged aggravated assault on DHS HSI Special Agent John Askew.

### C.    Proffered Evidence Does Not Have a Proper Purpose under Federal Rule of Evidence 404(b) and It is Not Relevant under Federal Rule of Evidence 401.

However, Rule 404(b) permits the limited admission of character evidence for other evidentiary purposes, such as "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed.R.Evid. 404 (2011). The Third Circuit also has "held that other-acts evidence admitted to provide helpful background information to the finder of fact constitutes a proper purpose under Rule 404(b)." *United States v. Miah*, 120 F.4th 99, 111 (3d Cir. 2024)(quoting *United States v. Green*, 617 F.3d 233, 250 (3d Cir. 2010))(cleaned up). Further, the Third Circuit has noted that "Rule 404(b) refers to evidence of crimes, wrongs, or other acts, saying nothing about whether the act in question is a 'prior' or 'subsequent' act."[3] *United States v. Bergrin*, 682 F.3d 261, 281 n.24 (3d Cir. 2012)(citing *Huddleston,* 485 U.S. at 686).

However, the Third Circuit has recognized that:

> The problem with propensity evidence is that it weighs too much with the jury because it overpersuades them as to prejudge one with a bad general record and denies the defendant a fair opportunity to defend against a particular charge, without limitations based on whether the charged and uncharged acts are the same.

*United States v. Smith*, 725 F.3d 340, 347 (3d Cir. 2013)(quoting *Michelson v. United States*, 335 U.S. 469, 476 (1948))(cleaned up). The purpose of Rule 404(b), therefore, is to protect an accused's constitutional right to a fair trial from the tendency that character evidence has to "overpersuade" the jury. Specifically, "[i]ts purpose is to keep from a jury evidence that suggests a person has a propensity to commit crimes or is otherwise a bad person." *United States v. Cammarata*, 145 F.4th 345, 366 (3d Cir. 2025)(quoting *United States v. Green*, 617

---

[3]The court in *Bergrin* further noted that Rule 404(b)'s reference to both prior and subsequent acts "makes sense because light can be shed on motive, intent, and the other issues listed in Rule 404(b)(2) as much by a subsequent course of behavior as it can by a prior one." *Bergrin*, 682 F.3d at 281 n.24.

F.3d 233, 249 (3d Cir. 2010))(cleaned up). In essence, Rule 404(b) seeks to ensure that "an accused is tried for *what* he did, not *who* he is." *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014) (emphasis in original).

Consequently, the Third Circuit has deemed Rule 404(b) to be a rule of exclusion which carries no presumption of admissibility. *See Caldwell*, 760 F.3d at 276. The Third Circuit has explained that "Rule 404(b) is a rule of exclusion, meaning that it excludes evidence unless the proponent can demonstrate its admissibility, but it is also 'inclusive' in that it does not limit the *non-propensity* purposes for which evidence can be admitted." *United States v. Repak*, 852 F.3d 230, 241 (3d Cir. 2017) (emphasis added).

The Supreme Court has established, and the Third Circuit has adopted, a four-prong test to determine whether evidence of the other crimes, wrongs or acts committed by a defendant are admissible under the Federal Rule of Evidence 404(b). *See Huddleston v. United States*, 485 U.S. 681 (1988); *United States v. Scarfo*, 850 F.2d 1015 (3d Cir.), *cert. denied*, 488 U.S. 910 (1988). The Third Circuit consistently has ruled that:

> A four-part test governs the admissibility of other-acts evidence under Rule 404(b). Such evidence must: (1) have a proper, non-propensity purpose; (2) be relevant to that non-propensity purpose; (3) satisfy the requirement under Federal Rule of Evidence 403 that its probative value is not substantially outweighed by the risk of unfair prejudice; and (4) be accompanied by a limiting instruction where requested.

*Miah*, 120 F.4th at 110 (citing *Repak*, 852 F.3d at 241). The proffered evidence is inadmissible under Rule 404(b) unless it meets these four criteria. *See Caldwell*, 760 F.3d at 277. While this "pronouncement is clearly the law of this circuit … it is so often honored in the breach that it resonates about as loudly as the proverbial tree that no one heard fall in the forest." *United States v. Givan*, 320 F.3d 452, 466 (3d Cir. 2003)(McKee, J., dissenting).

The Third Circuit requires "that the purpose of the Rule 404(b) evidence be established without an inference that the party against whom it is admitted acted in conformity with

whatever the evidence of the prior act says about his or her character." *Smith*, 725 F.3d at 345. The Third Circuit has interpreted Rule 404(b) to dictate that other bad acts evidence may be used only to prove a limited number of criminal elements. However, "[t]he party seeking admission, here the government, "must do more than conjure up a proper purpose—they must also establish a chain of inferences no link of which is based on a propensity inference." *Miah*, 120 F.4th at 110 (quoting *Smith*, 725 F.3d at 345).

In addition to serving a proper purpose, evidence of other bad acts must "be logically relevant, under Rules 404(b) and 402, to any issue other than the defendant's propensity to commit the crime...." *United States v. Palma-Ruedes*, 121 F.3d 841, 851 (3d Cir. 1997), *rev'd on other grounds by United States v. Rodriguez-Moreno*, 526 U.S. 275 (1999). Consequently, before evidence of other bad acts will be admitted, the government is required to "'articulate clearly how that evidence fits into a chain of logical inferences, no link of which can be the inference that because the defendant committed ... offenses before, he therefore is more likely to have committed this one.'" *United States v. Morley*, 199 F.3d 129, 137 (3d Cir. 1994)(quoting *United States v. Sampson,* 980 F.2d 883, 886-87 (3d Cir. 1992)).

Other bad acts are not inherently relevant to the proper purposes articulated under Rule 404(b). *See Caldwell*, 760 F.3d at 277 (quoting *Sampson*, 980 F.2d at 888). Evidence is relevant where there "is a relationship between the evidence and a material fact at issue which must be demonstrated by reasonable inferences that make a material fact more probable or less probable than it would be without the evidence." *Id.*; *see also* Federal Rule of Evidence 401. Thus,

> To be relevant, proffered evidence must fit into a chain of inferences - a chain that connects the evidence to a proper purpose, no link of which is a forbidden propensity inference. [T]his chain [must] be articulated with careful precision because, even when a non-propensity purpose is at issue in a case, the evidence offered may be completely irrelevant to that purpose, or relevant only in an impermissible way.

*Repak*, 852 F.3d at 243 (quoting *United States v. Davis*, 726 F.3d 434, 442 (3d Cir. 2013);

*Caldwell*, 760 F.3d at 281)(cleaned up).

The government claims that evidence regarding Mr. Rojas Benitez's communications with probation is relevant to show Mr. Rojas Benitez's "knowledge, intent, and absence of mistake during the crime on June 23, 2025" as well as his "consciousness of guilt." Gov't 404(b) Motion, p. 4.

The Third Circuit has ruled that "[i]n order to admit evidence under the intent component of Rule 404(b), intent must be an element of the crime charged and the evidence offered must cast light upon the defendant's intent to commit the crime." *United States v. Cross*, 308 F.3d 308, 322 (3d Cir. 2002)(quoting *United States v. Himelwright*, 42 F.3d 777, 782 (3d Cir. 1994))(cleaned up).

Evidence of Mr. Rojas Benitez's communications with probation will not serve to show that he acted with a particular purpose to assault law enforcement with a deadly weapon. Nor will this evidence serve to show that Mr. Rojas Benitez intended to impede a federal investigation; this determination will be based on the video of the Dodge Ram driving away from the law enforcement.

The entire event at question in this case is recorded in a video, the relevant parts of which are roughly 3 minutes long. During the 3 minutes the officers are ordering the driver to roll the windows down or they will break the window. They are wearing marked tactical vests. After roughly 3 minutes they break the window and the driver drives away. There is no conceivable basis for defense to suggest that this was a mistake. There is no conceivable basis for the government to need to introduce confusing, prejudicial evidence to rebut a theoretical defense of mistake, justification, or any other stretch of the imagination.

10

**D.      Potential to Unfairly Prejudice Substantially Outweighs Probative Value of Proffered Evidence under Federal Rule of Evidence 403.**

Federal Rule of Evidence 403 provides that,

The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

(2011). The Third Circuit has interpreted Rule 403 to prohibit the admission of evidence which would "overwhelm[] the jury and prejudice[] their judgment concerning the specific charges against [the defendant] in this case." *United States v. Jones*, 566 F.3d 353, 365 (3d Cir. 2009) (citing *United States v. Murray*, 103 F.3d 310, 315-16, 319 (3d Cir. 1997); *United States v. Hans*, 738 F.2d 88, 95-96 (3d Cir. 1984)).

If, *arguendo*, evidence of Mr. Rojas Benitez's immigration history (including criminal convictions), communication with a probation officer or violations of conditions of probation that occurred subsequent to the alleged crime are relevant to the determination of a material fact in the instant matter, its probative value is substantially outweighed by its prejudicial impact on Mr. Rojas Benitez, as well as other trial concerns.

### i.      Unfair Prejudice.

Rule 403 proscribes prejudice that is unfair "because it speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground *different* from proof specific to the offense charged." *Cammarata*, 145 F.4th at 368 (3d Cir. 2025) (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997)(cleaned up)(emphasis in original). When determining whether the probative value of evidence is substantially outweighed by the unfair prejudice its admission will produce, "the court must evaluate … whether the evidence is sufficiently probative, such that its probative value is not outweighed by [its] inherently prejudicial nature." *Caldwell*, 760 F.3d at 277. Specifically, the court "must

appraise the genuine need for the challenged evidence and balance that necessity against the risk of prejudice to the defendant." *United States v. Bailey*, 840 F.3d 99, 119 (3d Cir. 2016)(quoting *United States v. Claxton*, 766 F.3d 280, 302 (3d Cir. 2014); *Gov't of Virgin Islands v. Archibald*, 987 F.2d 180, 186 (3d Cir. 1993))(cleaned up).

### 1.    The Need for the Challenged Evidence.

The need for evidence, i.e., its "probative value is informed by the availability of alternative means to present similar evidence [and] may be calculated by comparing evidentiary alternatives." *Bailey*, 840 F.3d at 122 (quoting *Old Chief*, 519 U.S. at 184; *United States v. Awadallah*, 436 F.3d 125, 132 (2d Cir. 2006))(cleaned up). Thus, "[t]he need for the evidence depends mainly on its relative importance and centrality to the issues of the case and the availability of other evidence to establish the facts sought to be proven." *United States v. Crawford*, 376 F. App'x 185, 189 (3d Cir. 2010)(citing *United States v. Guerrero*, 803 F.2d 783, 786 (3d Cir. 1986)).

In this case, the government does not need to introduce evidence of Mr. Rojas Benitez's immigration history, communications with probation, or subsequent violation of conditions of probation to prove its case-in-chief. As discussed *supra*, without a showing of Mr. Rojas Benitez's specific intent in relation to the alleged assault, this prior incident is not probative of his specific intent in relation to the offenses currently charged. The government has access to multiple body camera videos capturing the entirety of the incident to support its theory of the case. In light of its limited probative value, and the government's ready access to other evidence, the government does not have a significant need to introduce evidence of Mr. Rojas Benitez's immigration history, communications with probation, or subsequent violation of conditions of probation in order to prove the offenses charged in the indictment. *See, e.g.*, *United States v. Barnes*, 2005 WL 2994698 at *6 (E.D.Pa., Aug. 16, 2005)(Padova, J.).

### 2. Risk that Evidence will Influence Jury to Convict on Improper Grounds.

The risk of prejudice to the defendant is heightened where the proffered evidence influences the jury to convict him on improper grounds. The Third Circuit has "noted that a significant danger of undue prejudice will be found to exist where there are substantial possibilities ... that a jury will harbor strong adverse sensitivity to the challenged evidence." *United States v. Sriyuth*, 98 F.3d 739, 748 (3d Cir. 1996)(quoting *United States v. Cook*, 538 F.2d 1000, 1004 (3d Cir. 1976)) (cleaned up). Such evidence "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case." *United States v. Guerrero*, 803 F.2d 783, 785–86 (3d Cir. 1986)(quoting *Carter v. Hewitt,* 617 F.2d 961, 972 (3d Cir. 1980))(cleaned up). *See also* Advisory Committee Notes, Fed.R.Evid. 403 (courts should exclude evidence that risks "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one"). The Third Circuit has "excluded evidence that contained highly reprehensible and offensive content that might lead a jury to convict because it thinks that the defendant is a bad person and deserves punishment, regardless of whether the defendant committed the charged crime." *United States v. Long*, 92 F.4th 481, 488 (3d Cir. 2024)(quoting *United States v. Welshans*, 892 F.3d 566, 576 (3d Cir. 2018)) (cleaned up).

In today's climate spending a majority of the government's case discussing 18 years of immigration proceedings to prove the defendant is illegally present is highly prejudicial. Evidence of prior unrelated criminal convictions is highly prejudicial. Similarly proving violations of conditions of probation is highly prejudicial.

### ii.    Confusion of Issues or Misleading the Jury.

The danger of jury confusion "arises when circumstantial evidence would tend to sidetrack the jury into consideration of factual disputes only tangentially related to the facts at issue in the current case." *United States v. McVeigh*, 153 F.3d 1166, 1191 (10th Cir. 1998), *cert. denied*, 526 U.S. 1007 (1999). Essentially,

> in attempting to dispute or explain away the evidence thus offered, new issues will arise as to the occurrence of the instances and the similarity of conditions, [and] new witnesses will be needed whose cross examination and impeachment may lead to further issues.

*Id*. (quoting 2  John Henry Wigmore, *Evidence* § 443, at 528-29 (James H. Chadbourn rev., 1979)). In their effort to decipher this extraneous information, jurors most likely will be misled into overvaluing the probative value of this evidence.

Any discussion of Mr. Rojas Benitez's immigration history will be confusing as it is a complicated and nuanced realm of law and not relevant to allegation of assault. Similarly, the conversations with probation are not tied to the sole issue in the case, whether the Dodge Ram was used as a deadly weapon, thus it will confuse the jury and distract them from the critical points at issue.

### iii.    Trial Concerns.

Rule 403 also provides for the exclusion of relevant evidence when its probative value is substantially outweighed by legitimate trial considerations, such as undue delay, waste of time, or needless presentation of cumulative evidence. "Undue" delay "encompasses the prolonging of the length of the trial, and can be read properly in conjunction with the other exclusionary factors: 'waste of time, or needless presentation of cumulative evidence.'" *United States v. Smithers*, 212 F.3d 306, 316 (6th Cir. 2000). "Evidence is 'cumulative' when it adds very little to the probative force of the other evidence in the case, so that if it were admitted its contribution to the determination of truth would be outweighed by its contribution to the length

14

of the trial ..." *United States v. Cross*, 308 F.3d 308, 325 (3d Cir. 2002)(quoting *United States v. Williams*, 81 F.3d 1434, 1443 (7th Cir. 1996), *cert. denied*, 522 U.S. 1006 (1997)).

The relevant portion of the video in this case is roughly 3 minutes long. The time needed to adequately address the issues raised in connection with the proffered evidence far exceeds the time necessary to litigate the actual issues in this case. The jury will be forced to examine the factual circumstances underlying the immigration history, required numerous limiting instructions, involve many unnecessary witnesses, and occupy a great deal of time in a federal courthouse during a government shutdown. This evidence leads jurors down a path that they do not need to go and will waste their time and the court's time in the process. Consequently, the limited probative value of the proffered evidence is substantially outweighed by the court's legitimate considerations of undue delay and waste of time.

The government possesses sufficient testimonial and physical evidence to support its version of events. The entirety of the alleged criminal acts are captured on video. Therefore, evidence of Mr. Rojas Benitez's immigration history, criminal convictions, and subsequent violations of conditions of probation are not needed to prove that Mr. Rojas Benitez committed the offenses currently charged. This evidence is substantially more prejudicial to Mr. Rojas Benitez than it is probative of the issue of whether Mr. Rojas Benitez knowingly committed the offenses presently charged in the indictment. The only inference that the jury will most likely make from this evidence is that Mr. Rojas Benitez is a criminal and illegal alien. Therefore, the direct and logical inference to be drawn from this evidence is that Mr. Rojas Benitez is guilty of the charged offenses because he has been guilty before and because he is an illegal alien. This evidence does not fit into a permissible chain of logical inferences, and does not go to a material issue other than character.

### E.    Limiting Instruction Will Not Repair Damage Inflicted Upon Defendant By Unfair Prejudice of Evidence of Prior Bad Act.

Contrary to the government's claim, a cautionary instruction to the jury will not suffice to overcome the irreparable harm to Mr. Rojas Benitez caused by the admission of the proffered evidence. The Third Circuit has concluded that curative instructions would be ineffective where there is "an overwhelming probability that the jury would be unable to follow the limiting instructions, or  a strong likelihood that the evidence would be devastating to the defendant[]." *United States v. Bradley*, 173 F.3d 225, 230 (3d Cir.)(quoting *United States v. Vaulin*, 132 F.3d 898, 901 (3d Cir. 1997)), *cert. denied*, *Mattison v. United States*, 528 U.S. 963 (1999)(internal quotations omitted). Indeed, "sometimes evidence is so prejudicial that the risk of a jury's improper use of the evidence cannot be quashed by a judge's instructions." *Asher*, 910 F.3d at 862. Such is the case here. Regardless of whatever proper purpose the government may claim to support the introduction of this evidence, "there is no realistic basis to believe that the jury will cull the proper inferences and material facts from the evidence" and judge Mr. Rojas Benitez according to the charges as they are presented in the indictment. *Sampson*, 980 F.2d. at 889.

If the government is permitted to introduce evidence of Mr. Rojas Benitez's criminal history and he is painted to be an illegal alien through 18 years of immigration proceedings, no reasonable juror, even after receiving the most forceful and thorough instructions, will be able to avoid the temptation to conclude that, if Mr. Rojas Benitez is a criminal and an illegal alien and distract them from focusing on the only real issue in the case, whether he used the vehicle as a dangerous or deadly weapon. "The force of the improper propensity evidence would be too powerful for any juror to ignore, any attorney to leave unanswered, or any judge to guard against." *United States v. Gilbert*, 229 F.3d 15, 22 (1st Cir. 2000).

### III.    **CONCLUSION**

Evidence of Mr. Rojas Benitez's immigration history (which includes criminal convictions), communications with probation, or subsequent violation of conditions of probation are not relevant for any permissible purpose under Rule 404(b). To the contrary, this evidence is relevant only if the jury may draw the inference that the alleged bad acts evinced a propensity of having a criminal character, "and that, of course, is the one inference that other crimes [wrongs or acts] evidence may not be admitted to support." *United States v. Boyd*, 595 F.2d 120, 127 (3d Cir. 1978).

The evidence proffered here simply portrays Mr. Rojas Benitez, the type of person who was convicted multiple times and committed multiple violations of his probation, and that he is an illegal alien person. The government seeks to use this evidence to prove Mr. Rojas Benitez's character in order to show that on a particular occasion Mr. Rojas Benitez acted in accordance with that character, which would directly violate Rule 404(b). *Smith*, 725 F.3d at 346. The jurors will most likely reach this conclusion despite the presentation or omission of other relevant evidence.

Hence, where the evidence shows only character, or that the defendant had a propensity to commit the crime, regardless of how logically relevant under Rule 404(b), it must be excluded.  Where, however, the evidence also tends to prove some fact besides character, admissibility depends upon whether its probative value outweighs its prejudicial effect.

Mr. Rojas Benitez does not quarrel with the proposition that under certain circumstances this type of evidence may be admissible. However, "Rule [404(b)] reflects the revered and longstanding policy that, under our system of justice, an accused is tried for *what* he did, not *who* he is." *Caldwell*, 760 F.3d at 276.

**WHEREFORE**, the government's request to admit the proffered evidence should be denied.

Respectfully Submitted,

*/s/ Jonathan McDonald*
JONATHAN MCDONALD
Assistant Federal Defender
ANGELA M. HAYNES
Research and Writing Attorney

## <u>CERTIFICATE OF SERVICE</u>

I, Jonathan McDonald, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I have caused a copy of Defendant's Response to the Government's Notice to Admit Evidence of Other Bad Acts Pursuant to Federal Rule of Evidence 404(b) to be filed and served electronically through the Eastern District Clerk's Office Electronic Case Filing System ("ECF") upon Katherine Shulman, Assistant United States Attorney, United States Attorney's Office, 615 Chestnut Street, Suite 1250, Philadelphia, Pennsylvania 19106.

_/s/ Jonathan McDonald_
JONATHAN McDONALD
Assistant Federal Defender

DATE:  <u>October 16, 2025</u>